IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **TexasFile, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Cause No.: _____ |
| **Tyler Technologies, Inc., d/b/a** | § | |
| **TexFile.com** | § | |
| | § | |
| Defendant. | § | |

## ORIGINAL COMPLAINT

Plaintiff TexasFile, LLC files this Original Complaint against Defendant Tyler Technologies, Inc., d/b/a TexFile.com alleges as follows:

### PARTIES

1. Plaintiff TexasFile, LLC ("TexasFile") is a limited liability company organized under the laws of the State of Texas. TexasFile maintains its principal place of business at 9555 Lebanon Road, Suite 503, Frisco, Texas 75035.

2. Defendant Tyler Technologies, Inc., d/b/a TexFile.com ("TexFile.com") is a corporation organized under the laws of Delaware, with its principal place of business at 5949 Sherry Lane, Suite 1400, Dallas, Texas 75225. Tyler Technologies may be served upon its registered agent for service of process, Capital Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas, 78701.

### JURISDICTION AND VENUE

3. The action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051, *et seq.* Accordingly, this Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction

over the claims which arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a) because the claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

4. Defendant does business in the State of Texas and has sufficient contacts with the State of Texas and this judicial district to confer specific and general personal jurisdiction in the State of Texas.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391.

**FACTS**

6. Plaintiff TexasFile provides online access to county records, including deed and lien records, oil, gas, and mineral leases, mortgage documents, powers of attorney, foreclosure records, easements and right of way records, plat maps, and title plants. TexasFile's online databases also include mineral appraisal data and drilling permit data from the Texas Railroad Commission. In addition, TexasFile also provides online access to assumed name certificates, divorce, probate, tax liens, death certificates and other civil lawsuit information in a number of Texas counties.

7. Using its state-of-the-art search engine, TexasFile allows its customers to search for county records recorded in 180 different Texas counties in one, convenient, easy-to-navigate website. TexasFile has also developed a sophisticated, proprietary geographic information system ("GIS") mapping feature that integrates with county records and provides a visual interface for researching land and title records.

8. TexasFile's customers search all of these county records for free on its online website, and pay a small fee to view, print, or download the documents. TexasFile also offers advanced search options for a fee. By consolidating all of these county records on a single searchable website, TexasFile saves its customers substantial amounts of both time and money,

making the entire process of searching for and obtaining copies of county records significantly more convenient.

9. On March 11, 2005, TexasFile registered the domain name www.TexasFile.com. Prior to the launch of its website, TexasFile invested a significant amount of time and money contacting county governments and developing the website and its business. Indeed, TexasFile invested thousands of hours and hundreds of thousands of dollars obtaining data from Texas counties, digitizing, and organizing that data. In addition, TexasFile has invested hundreds of thousands of dollars in computer programming and hardware expenses to develop, organize, host, and maintain a database that now contains over 120 terabytes of county records.

10. TexasFile launched its website in November 2006. In 2006, TexasFile provided online, searchable access to records for five Texas counties. By the end of 2006, TexasFile had more than fifty users. On February 13, 2007, TexasFile began accepting credit cards online, and its user base continued to expand. By the end of 2007, TexasFile had more than 2,900 users. TexasFile's user base continued to expand year after year as it added electronic data for additional counties. By the end of 2012, TexasFile had approximately 100,000 users, and has had even more users in 2013. TexasFile now provides online access to electronic records from 180 Texas counties, and is currently working to add data from another 10 Texas counties. In addition, TexasFile has expanded its business outside of Texas to include access to data from counties in New Mexico and Oklahoma.

11. Since its inception in 2005, TexasFile has used the trademark "TexasFile" and www.TexasFile.com to identify itself and the services it provides through its website. Similarly, TexasFile adopted and has used the TexasFile logo, seen below, for the same purposes since at least December 2006. Together, "TexasFile," www.TexasFile.com, and the TexasFile logo are herein referred to as the TexasFile Trademarks.



12. TexasFile has invested thousands of hours and dollars promoting and marketing its services using the TexasFile Trademarks since 2005. Among other things, TexasFile advertises in various printed publications, creates and distributes brochures, and sends thousands of postcards, brochures, pens, and other marketing materials using the TexasFile Trademarks to both its customers and prospective customers. TexasFile also spends hundreds of hours visiting various Texas county courthouses, handing out brochures, business cards, and other marketing material using the TexasFile Trademarks. TexasFile has been mentioned in several newspaper articles, national trade publications, and online articles promoting the website as a convenient research tool for consumers.

13. TexasFile markets heavily to various industry trade associations using the TexasFile Trademarks. Among other industries, TexasFile markets to professionals in the following industries: oil and gas, legal, abstract, title and land, real estate appraisers, mineral appraisers, realtors, banks, mortgage companies, title clearing, surveyors, right of way, division order analysis, genealogy, property tax lenders, marketing list firms, renewable energy, and environmental title industries. Since 2006, TexasFile has also attended, hosted booths, handed out brochures and other marketing collateral, and advertised its services using the TexasFile Trademarks at more than 25 different industry trade shows. Conservatively estimated, more than a hundred thousand individuals have attended these trade shows and had the opportunity to visit TexasFile's booth and obtain marketing materials, all of which prominently displayed the TexasFile Trademarks.

14. TexasFile also markets its business online using the TexasFile Trademarks. In addition to its website, www.TexasFile.com, TexasFile also uses email marketing to communicate with its registered users and to develop new business, all using the TexasFile Trademarks. Conservatively estimated, TexasFile sends electronic newsletters and other marketing material to more than one hundred thousand customers and prospective customers each year.

15. In addition, TexasFile invests heavily to optimize search engine results on Google and other prominent internet search engines. TexasFile's substantial investment in marketing its business with the TexasFile Trademarks online and elsewhere has paid significant dividends. Indeed, since TexasFile started tracking activity using Google Analytics in 2008, TexasFile has had approximately 2.5 million visits to www.TexasFile.com, 900,000 unique visitors, and 31.5 million page views.

16. As a result of its long and continuous use and its high quality products and services, the TexasFile Trademarks have earned and maintain a highly distinctive status. As a result of TexasFile's early adoption and long-established use, the TexasFile Trademarks are widely recognized and relied upon by the public in Texas and throughout the United States to identify TexasFile, TexasFile's products and services, and to distinguish TexasFile's products and services from the products or services of others.

17. The TexasFile Trademarks are well-known, inherently distinctive and/or have acquired distinctiveness long prior to Defendant's entrance into the market. The goodwill associated with the TexasFile trademarks is a valuable asset to TexasFile. TexasFile has expended great effort and considerable resources in promoting its goods and services under its trademarks. As a result of this widespread and continuous use and promotion, the TexasFile Trademarks have become widely associated with TexasFile; the trademarks identify TexasFile as the source of the goods and services offered and represents the valuable goodwill of TexasFile among members of the relevant consuming public.

18. Defendant Tyler Technologies, d/b/a TexFile.com is a for profit corporation that provides software and software-related services to the public sector, including state, county, and local governments.  TexFile.com owns and operates websites that directly compete with TexasFile.  One of its websites, www.countygovernmentrecords.com, for example, provides online access to county courthouse records.  This website sells copies of county records from several of the same counties covered by TexasFile.  On or about September 12, 2012, TexFile.com registered the following domain names: www.Texas-File.com; www.Tx-File.com; and www.FileTexas.com.

19. On or about October 22, 2012, TexFile.com registered the domain www.TexFile.com.  Shortly thereafter, TexFile.com launched www.TexFile.com.  TexFile adopted the logo shown below, which is displayed prominently on www.TexFile.com, and on a number of county websites.  Like the TexasFile logo, the TexFile logo incorporates an image of the State of Texas, digitized squares, and the word mark "TexFile," written in contrasting colors, with each syllable separately capitalized.



20. The TexFile mark, its domain name, and its logo (collectively, the "Infringing Marks") are confusingly similar to the TexasFile Trademarks.  The word marks and domain name are substantially similar.  In addition, TexFile.com registered additional domain names that are substantially identical to the domain already in use by TexasFile (*e.g.,* www.Texas-File.com).  TexFile.com even adopted a confusingly similar logo, which incorporates the same arbitrary

design elements in the TexasFile.com logo.  Upon information and belief, TexFile.com adopted the Infringing Marks solely to capitalize on the reputation and goodwill associated with TexasFile.




21.     The Infringing Marks are likely to confuse consumers into believing that TexFile's commercial services are sponsored by, connected with, endorsed by or otherwise affiliated with TexasFile.  Indeed, TexasFile has already experienced first-hand, actual confusion among its customers caused by TexFile's adoption and use of the Infringing Marks.  The likelihood of confusion is compounded by the fact that a number of county websites are linking directly to www.TexFile.com using the Infringing Marks.

22.     This confusion will only intensify after January 2014, the go-live date for electronic filing in the State of Texas, and it is compounded by the fact that a number of county websites are linking directly to www.TexFile.com using the Infringing Marks.  In late 2012, the Texas Supreme Court mandated electronic filing in civil cases in district courts, statutory county courts, constitutional county courts, and statutory probate court on a graduated schedule from January 2014 through July 2016.  TexFile purports to be the "official e-filing system for Texas," stating on its website that "all electronic filing will be processed through TexFile, connecting filers with the court system via a web-based portal."  A number of county websites in Texas,

including Harris County, Collin County, Dallas County, and a number of other populous counties, now link to the TexFile website, using the TexFile name and logo.

23. Further, Defendant's use of the Infringing Marks dilutes the strength of TexasFile's well-established and distinctive trademarks. This use will substantially harm TexasFile's reputation. TexFile.com's willful acts will cause irreparable harm to TexasFile and its trademarks. TexasFile seeks to stop this unlawful activity and recover monetary damages and injunctive relief to which it may be entitled, as is further set forth below.

## COUNT I: Unfair Competition (15 U.S.C. § 1125(a))

24. Plaintiff hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

25. This cause of action arises under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

26. By and through the acts and omissions described in more detail above, Defendant has, without Plaintiff's consent or authorization, used in interstate commerce and to advertise and/or promote its services, a word, term, name, or symbol, or any combination thereof which are likely to mislead, cause confusion, and/or cause mistake or deception regarding Plaintiff's services and/or commercial activities, and/or approval or sponsorship of the false advertisements.

27. Defendant's acts and omissions described in this Original Complaint and in this Count constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

28. Upon information and belief, Defendant was aware of Plaintiff's ownership and prior use of the TexasFile Trademarks in advance of adopting the Infringing Marks. As such Defendant's use of the Infringing Marks constitutes willful infringement.

29. Plaintiff has been damaged by Defendant's acts in amount to be determined at trial, and if Defendant's conduct is allowed to continue, Plaintiff and its goodwill and reputation

will continue to suffer immediate, substantial, and irreparable injury that may not be adequately calculated and compensated in monetary damages.

30. Because Defendant's actions have been conducted willfully and intentionally, this is an exceptional case and Plaintiff is entitled to recover Defendant's profits together with Plaintiff's damages, trebled, costs of the action and reasonable attorney's fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

31. Plaintiff is entitled to monetary damages and injunctive relief prohibiting Defendant from using the Infringing Marks, and any other trade name, trademark, service mark, user name, or domain name that is likely to be confused with Plaintiff's marks or that will otherwise unfairly compete with Plaintiff.  Without preliminary and permanent injunctive relief, Plaintiff has no means by which to control the continuing injury to the reputation and goodwill associated with its marks.  Money damages may not adequately compensate Plaintiff from damage to its reputation and associated goodwill through Defendant's use of the Infringing Marks.

## **COUNT II: Dilution Under Texas Business and Commerce Code**

32. Plaintiff hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

33. Plaintiff is the exclusive owner of the TexasFile Trademarks.

34. Plaintiff's trademarks are distinctive.

35. Plaintiff's trademarks have garnered widespread publicity and public recognition in Texas and elsewhere.

36. Plaintiff has not authorized or licensed Defendant's use of the Infringing Marks.

37. Defendant's use of the Infringing Marks in the marketing, advertising, offering for sale and selling of its commercial services actually dilutes, or is likely to dilute, the distinctive quality of Plaintiff's trademarks, and it lessens, or is likely to lessen, the capacity of Plaintiff's trademarks to identify and distinguish Plaintiff's goods and services.

38. Defendant's unlawful use of the Infringing Marks causes blurring and tarnishment in the minds of consumers, thereby lessening the value of Plaintiff's trademarks and the unique identifier of Plaintiff's goods and services.

39. By the acts described above, Defendant has intentionally and willfully diluted the distinctive quality of Plaintiff's trademarks and the acts of Defendant complained of herein constitute dilution of Plaintiff's trademarks in violation of the Texas Business and Commerce Code.

40. Plaintiff has been damaged by Defendant's actions in an amount to be determined at trial, and if Defendant's conduct is allowed to continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that may not be adequately calculated and compensated in money damages.

## COUNT III: Trademark Infringement Under Texas Common Law

41. Plaintiff hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

42. Plaintiff's trademarks are distinctive.  Based on Plaintiff's use, publishing, advertising, marketing, and the general popularity of its trademarks, they have acquired secondary meaning so that the public associates its trademarks with Plaintiff's goods and services.

43. Plaintiff has made continuous use of its trademarks since introducing them in commerce in 2006.

44. Defendant has intentionally used the Infringing Marks without Plaintiff's consent or authorization. Defendant's use of the Infringing Marks in connection with its commercial services is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendant's commercial services emanate from or originate with Plaintiff, or that Plaintiff approves of or sponsors, or otherwise associates itself with, Defendant.

45. Plaintiff has been damaged by Defendant's actions in an amount to be determined at trial, and if Defendant's conduct is allowed to continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that may not be adequately calculated and compensated in monetary damages.

46. The acts of Defendants complained of herein constitute infringement in violation of the common law of the State of Texas.

### COUNT IV: Unfair Competition Under Texas Common Law

47. Plaintiff hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

48. By making unauthorized use in commerce of the Infringing Marks, Defendant is likely to cause confusion, mistake, or deception as to the affiliation or connection of Defendant with Plaintiff and as to the sponsorship or approval of Defendant's commercial services.

49. Defendant's marketing, advertising, offering for sale and provision of its commercial services cause confusion and mistake, deceive and mislead the purchasing public,

trade upon Plaintiff's high quality reputation, and improperly appropriate to Defendant the valuable goodwill of Plaintiff.

50. By the acts described above, Defendant has intentionally and willfully infringed Plaintiff's marks in violation of Texas common law.

51. Plaintiff has been damaged in an amount to be determined at trial, and if Defendant's conduct is allowed to continue, Plaintiff and its goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

### COUNT V: Cybersquatting under 15 U.S.C. § 1125(d)

52. Plaintiff hereby alleges and incorporates all of the preceding allegations as if set forth fully herein.

53. On information and belief, Defendant registered the domain names: www.Texas-File.com; www.Tx-File.com; www.FileTexas.com; and www.TexFile.com ("the TexFile Domain Names").

54. On information and belief, Defendant is the current registrant of the TexFile Domain Names.

55. The Texas File Trademarks were distinctive at the time the TexFile Domain Names were registered.

56. The TexFile Domain Names are identical to, or confusingly similar to, the distinctive Texas File Trademarks.

57. On information and belief, Defendant has a bad faith intent to profit from the Texas File Trademarks.

58. Defendant's registration and use of the TexFile Domain Names constitute cybersquatting in violation of 15 U.S.C. § 1125(d), entitling the Plaintiff to relief.

59. By reason of Defendant's actions herein, the Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

60. On information and belief, Defendant's actions alleged herein are willful and malicious, and intended to injure and cause harm to Plaintiff.

61. By reason of Defendant's actions alleged herein, Plaintiff is entitled to recover Defendant 's profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiff, in an amount of one-hundred thousand dollars ($100,000.00) per domain name.

## REQUEST FOR JURY TRIAL

62. Pursuant to Rule 38(b), Fed. R. Civ. P., Plaintiff demands a trial by jury.

## PRAYER

For the reasons stated above, counterclaimant TexasFile prays:

A. that Defendant, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from competing unfairly with TexasFile and from using the TexasFile Trademarks in any manner whatsoever that is likely to cause confusion, including:

(i) continuing to offer to sell or sell any products or services using the Infringing Trademarks;

(ii) falsely or misleadingly representing itself and its activities, goods, and services to be sponsored by, approved by, or affiliated with TexasFile;

(iii) falsely or misleadingly representing any product or service of TexFile as originating from, being sponsored by, or approved by TexasFile;

(iv) committing any other acts or making any other representations, express or implied, that would infringe any of TexasFile's rights, or that would confuse, mislead, or deceive consumers as to TexasFile's sponsorship of, approval of, or affiliation with TexFile;

(v) inducing, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i)-(iv) above;

B. for an award of damages sustained as a result of Defendant's activities, trebled as allowed by law;

C. for an award of exemplary damages sustained as a result of Defendant's activities;

D. for an accounting of Defendant's sales resulting from their activities and unjust enrichment, and that their profits be paid over to TexasFile, increased as the court finds to be just under the circumstances of this case;

E. for an award of attorneys' fees and costs as allowed by law;

F. for an award of prejudgment and post-judgment interest on all sums awarded; and

G. for such other and further relief as the court may deem just, equitable and appropriate.

DATED: October 30, 2013                              Respectfully submitted,

*s/ John T. Cox III*
John T. Cox III, Lead Counsel
   Texas Bar No. 24003722
   tcox@lynnllp.com
Christopher J. Schwegmann
   Texas Bar No. 24031515
   cjs@lynnllp.com
**LYNN TILLOTSON PINKER & COX, L.L.P.**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800  Phone
(214) 981-3839  Fax

John Flood
   Texas Bar No. 07155910
   john@floodandflood.com
**FLOOD & FLOOD**
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401
(361) 654-8877 Phone
(361) 654-8879 Fax

**ATTORNEYS FOR PLAINTIFF**